Good morning, your honors. May it please the court, I'd be happy to discuss any of the issues we've raised in our brief, but I'd like to begin this morning by focusing on the last argument we've raised, our sentencing argument, and our position is that the district court should not have applied an enhancement, a two-level enhancement for sophisticated means, because the fraud scheme here was not, quote, especially complex or especially intricate as compared to an ordinary run-of-the-mill fraud. The essence of this case was simply moving money from one account to another. And while the jury found that that was fraudulent, there was nothing especially complex about it. It was more than just moving it from one account to the other. It was moved about three or four times, wasn't it? To his wife, here, there. That's true. There were multiple accounts, but all of those accounts were either in his name, his wife's name, or their businesses' names, and so there was nothing difficult about tracing them. As he acknowledged, as Mr. Graves acknowledged as a former FBI agent, there's always a money trail, and the government here had no trouble tracing all this and laying out to the jury, here's where it went from this account to this account to this account. And so, while we acknowledge there were a number of accounts, there's nothing particularly sophisticated about a husband and wife who both have businesses, each having personal accounts and business accounts. And it does start adding up to five or six accounts here, but there was nothing, there were no fictitious accounts or false identities used. There were no offshore accounts. And those are the types of sophisticated means that are listed in the guidelines as examples. You know, they channeled $200,000 of, just for one thing, of Tauher's money through four separate accounts in a few days. I mean, you know, this is, looks like to me like money laundering, and that's a lot of money in a lot of different accounts. Well, and that's what made it fraud, but that's what was inherent in the fraud scheme here. And so, that's why we submitted the 28-J letter in regards to the recent Adepoju decision, that this Court has articulated the standard that sophisticated means, by the language of the guidelines, don't apply to every fraud scheme. What we're looking for is we're looking for multilayered measures which complicate the paper trail, and that's what you have here. Well, it's not any minimal level of complication. It has to be something over and above an ordinary fraud. How about concealment? Well, I think, again, it has to be something over and above a concealment that's necessary to commit a fraud. If there had been full disclosure here, it wouldn't have been fraud if they had told everyone where this money was going. But the concealment here was moving it from one account to another, and that's what made it the fraud. So, that's inherent in the crime. Well, you know, this would have to be subject to a clear error standard. Well, we would acknowledge that if it's a factual determination, it is clear error review. However, it appears possible from this record that the court was saying that per se, using multiple accounts as a— This is what we're having here. We're having sentencing determinations, and defense counsel are constantly trying to move off a clear error standard and push it up to a mixed question or even better, the no vote. And what I look at is I see this pushing up to mixed question and the no vote review as an effort to take sentencing determinations away from the trial judge. And what you look at when you have a clear error standard is what respective advantage does a trial judge have over an appellate judge in making the determination. And in this case, the district court sat through a long jury trial in which all this scheme unfolded before his eyes. So, what you're looking at is who really is in the best position to make the call? And wouldn't a district court be in the best position to make the call after seeing the scheme explained and discussed at great length before the jury? He understood better than we do, I think, whether this was a sophisticated fraud scheme. I mean, he's in an ideal position to make that determination. Your Honor, we're not trying to retreat from the clear error standard except to the extent this record can be read as a per se ruling that any use of multiple accounts is sophisticated means. Now, if the district court was not very lengthy in his explanation, but if the district court is making a factual determination, we'll acknowledge that's a clear error standard of review. But it's dependent on the language of the guideline. And the language of the guideline says especially complex or especially intricate as compared to the ordinary fraud. And this court has to take a global view and lay down a precedent from a higher perspective rather than the individual case. This court can take a broader picture and say as compared to the ordinary fraud, this is fairly run of the mill. It was not that difficult to trace all the money through these several accounts. It was laid out very clearly to the jury. And so there wasn't anything similar or comparable to the examples that are listed in the guideline. And we would say that it has to be at least that sophisticated, certainly under the recent Adepoju decision. There's a lot of money in a lot of different accounts. They weren't just one or two. With respect to Tower's money, you have four separate accounts. And that stuff is being shuttled between his account and his wife's account. And there are bank transfers all over the place. They're bending over backwards to make sure that these funds are going to be incredibly difficult to trace. Well, Your Honor, I would respectfully suggest that they were not that difficult to trace because it was very obvious. If there was no money in an account and then $200,000 got dropped into it and then it was immediately transferred out, it was very obvious to track the money trail here. And this court has never said that a particular number of accounts or a particular dollar amount was sufficient to make sophisticated means. This is not a Bernie Madoff level scheme here. This is not offshore accounts. These are not fictitious entities. All of these transfers are- It sounds like you're proposing a little per se rule of yourself, the Bernie Madoff rule. No, no. Or the offshore accounts rule. Well, the guidelines give those examples. It seems to me you've repeated that several times, which means that anything short of that doesn't qualify. I think it has to be something at least as sophisticated as that because that's the language- Bernie Madoff? Well, as offshore accounts or fictitious entities because that's what's listed in the guidelines. That's the language the district court has to apply when applying this standard. And so any other alleged sophisticated means has to be read to be at least as sophisticated as that because otherwise there's no reason to put those in there. And these bank transfers, all they had to do was subpoena the bank. They're listed there in their names. They're very easily traceable, the money going from one account to another. And again, that's what made it fraught. There's nothing over and above what was necessary and inherent in the crime, such as creating a shell corporation or a fictitious entity. You and I have both seen a lot of fraud schemes that are much simpler than that. Well, we've also seen some that are much more complex. And this guideline- They have fact-finders. Well, but this guideline, the judge has to apply this guideline. And this guideline is not one that by its terms can apply to every case. No, but you're not contending he applied the wrong section of the guideline. Not the wrong section, but- He got the guideline right. Well, if you read the language the district court stated, it's actually virtually circular that the transfer of money through the multiple accounts, obviously transparently an attempt to conceal the wrongdoing, the sophisticated means enhancement was appropriately applied, and the court so finds that's on 1026 of the appendix. And that's really a circular analysis or explanation that I find it was sophisticated, therefore it's sophisticated means. And at a minimum, under the Carter line of cases that this court has laid out many times, that that's not a sufficient explanation of applying the guideline language to the facts of this case. The judge never said, I find that this was as complex as the examples given in the guideline. There's two different stages here. Certainly at trial, the government ought to have all its ducks in a row, and it did. But part of it, the transfer into the wife's account and the transfer out helped to bolster his statement to the FBI person who said the money came from his wife. And that's pre-trial, the things that they were doing. He made statements about $150,000 from his wife. Well, they had to put the money in her account so he could corroborate that statement. Well, but that's again what made it the fraud. The fact that it came out of one account rather than another. But there's nothing especially complex about robbing Peter to pay Paul, so to speak. And I would submit that that's really the essence of what this case is all about, is simply moving money from one account to another. And with the time I have remaining, I would like to briefly touch on the Investment Advisor Act fraud issue. Our position is that it's the government's burden to prove that the defendant was not acting as a broker-dealer in connection with the transaction. That's the government's burden, isn't it? You're a registered investment advisor, and this is an affirmative defense you're asserting, isn't it? No, we would argue it's not, Your Honor, for several reasons. One is just— You're asserting the exception, the broker-dealer exception. But that's not necessarily an affirmative defense, just the fact that it doesn't apply to certain conduct. You can say it's not an affirmative defense, but at a minimum, I'm not sure it isn't an affirmative defense, because the burden would shift, it seems to me, once they show you are an investment advisor. Then you need to show that you fit within the exception. Well, our position— That's your burden. Our position is it's the opposite, that these are two sides of the same coin, and that they have to prove he was acting, not just registered. That was their stipulation, and we did stipulate that he was licensed as an investment advisor, but the stipulation did not say that he was— I thought you stated that, but you stipulated that he was an advisor within the meaning of the act. Well, but the— I think you did stipulate that. It does reference the statute, but the statute also contains the exemption. And so the crime, and as the jury was instructed, was that he had to be acting as, not just registered, but acting as an investment advisor in those transactions. And so the flip side of that is he was not acting in connection with a broker-dealer business. And so, and really, the reason— I mean, apart from the stipulation, apart from the fact that this is, again, here on plain error review— Well, we believe we have preserved it. All right. Okay. But those are little hurdles. And then, well, the stipulation is a huge hurdle, and the plain error review is another hurdle. And then you have the additional hurdle that the evidence showed. He was offering to people who he wanted to invest in, wanted to invest in DARE and BPM and was receiving their fees and their funds. And he was offering investment advice to those individuals quite apart from any business. He was from any capacity in which he was acting as a broker-dealer. It was clear that this fraud scheme, he was, in the course of soliciting the funds, he was offering investment advice, not operating as a broker-dealer. He was operating as investment advice as to why these poor victims would have a really good, safe, profitable investment in parking their funds and their money with BPM or DARE. Now, if that isn't an investment advisor, what in the world is? Well, the reason for the exemption, Your Honor, is that a broker-dealer is allowed to offer some investment advice if it's in connection with the broker-dealer business. And the courts have construed that very broadly to say it really has to be just an incidental. This fraud scheme wasn't in connection with his broker-dealer business. His whole fraud scheme depended upon the investment advice he offered to the people he was trying to swindle. Well, respectfully, Your Honor, as we've laid out in the briefs and as my time is diminishing, I think we have a different read of what the evidence is. But ultimately, the government didn't even try to prove that the exemption didn't apply here. All they relied on was the stipulation. And we say the stipulation might have been a necessary component of it, but it wasn't sufficient because it didn't cover acting as an investment advisor. That's the malpractice analogy that we've raised in our briefs. But you stipulated that you were an investment advisor within the meaning of the act. Which includes... The whole act, not just a part of the act. That's part of it, too. Exemption is part of the act. And so the government has to prove that he was acting as an investment advisor and not acting as a broker-dealer, and it didn't even attempt to. Thank you, sir. Reserve some time, thank you. Yes, you have reserved some time. Mr. Muellendorf? Good morning. May it please the Court. Kevin Muellendorf on behalf of the United States. I represent the United States here on the appeal and also represented the United States at trial. I'll go in the order that the counsel did, starting with the sophisticated means. I'm just going to briefly touch on it because I think the Court had it right in its questions. There were multiple steps. The Talhart transaction you focused on. Four different transactions to move $200,000 through multiple accounts, including opening and closing an account on the same day, is the essence of trying to conceal what you're doing. And it isn't just, as I think the Court focused on, it isn't just to conceal it from law enforcement, but he was concealing it also from his compliance folks. The money had to go into the right account to start with so that if the compliance people came looking, they would see that it was going into the right account. But instead, he moved it through multiple accounts to conceal it on the front end and conceal it on the back end. And the last thing I'll say about that is, as the Court noted, the judge not only heard the trial but heard argument on this point. It was briefed and he made a finding. I don't think it's this Court's position, at least I hope not, that the judge has to in detail set out everything that goes into his thoughts when he has already heard and briefed it and then makes a finding on the record that this was sophisticated means. Unless there are further questions on sophisticated means, I'd like to move on to the Investment Advisor Act issue. John Graves was an investment advisor. There's no question about that on a number of fronts. He was registered as an investment advisor. And as you noted, Judge Wilkinson, he stipulated to it, not just writ large that he was an investment advisor, but for purposes of the Act. And that was done intentionally. It was a stipulation that was negotiated. And I feel a little bit that this is a, I don't want to say trial by ambush, but… But stipulations generally to take the issue off the table at a trial. And he did not want that issue on the table. Precisely, because we would have then had to put in more evidence showing how he had lied to these individual clients. In order to prove he was an investment advisor, you would have gone into detail into his relationship with these victims. And that's the last thing that Mr. Graves wanted. Precisely. This was a tactical decision that both parties made to take this issue off the table. We wanted to focus on was there a fraud. The thing he was convicted of and doesn't appeal, the 1349 and the mail-on-wire fraud. And so we took this issue off the table, but… The least sympathetic aspect of his case would have been pounded. Correct, correct. Now, that's not to say we didn't put in some evidence. And if we get to that point, I can go through that. We do think there was evidence on the record that if it was our burden, which we don't believe it was, we met that burden. But it was precisely that tactical decision that they're challenging here. And one has to remember, before the trial even started, the government submitted a trial brief that's in the record that laid out what the four elements we believed we had to prove. No challenge from the defense on that. The jury instructions went in unchallenged. Nowhere did defense raise this issue of essentially an extra element disproving an exemption. So it's a little odd to be here today for the first time arguing that we had this burden to prove almost I think it's a two or three element thing that was never raised before. Certainly not what we understood going into the trial. So I think from a practical level, what Judge Spencer heard and what Judge Spencer was evaluating at the time was these four elements he gave to the jury. Element number two was the while acting as an investment advisor, and the jury clearly made a finding that that's what he was doing by finding him guilty. So this is all, it's a post hoc attempt to salvage this Investment Advisor Act claim, which was very clearly proven beyond a reasonable doubt to the jury. Anything further? I don't have anything further on that. Maybe my colleagues have some questions of you. We don't have any questions, so that's fine. All right. Thank you. I won't require too much more of your time, Your Honors. I do want to make just a couple of very quick points. Our interpretation of the evidence is that these clients initially came to Mr. Graves through BPM, and so that was sufficient to arise out of the broker-dealer business. And then the jury instruction, clearly the language of it was that they had to prove that he was acting as an investment advisor, and we submit that that's different than merely being licensed to give investment advice. And then finally, to the extent there's any ambiguity or confusion or question about whether, which party has the burden here, the Smith case from the Supreme Court says that if a fact would negate an element, then due process would prohibit putting the burden on the defendant to negate that issue. And so our position is that proving he was acting as a broker-dealer would negate the investment advisor element, and so due process requires the government bear that burden. And finally, to the extent the statute, I'm sorry. Please. If that was the case, would the government have to prove each of the seven statutory exemptions did not apply in each and every case? I think. It seems very odd. Well, the broker-dealer exemption is in the same paragraph, and so we would say it at least applies to that. How would you distinguish, though? Well, I think. Seven exemptions, right? I'll take your word for it. I haven't read every paragraph of the statute lately, but I think anything that's challenged at trial, the government would have to prove. And here there was argument several times, perhaps a bit colloquially. I thought that your whole argument was that this negated an element of the offense. So if that is the case, then your position, it seems to me, would have to be that you would have to prove all of these different exemptions did not exist because they would all be elements. In other words, the exemption would be part of the element of the offense. Well, we're happy to take that position. Well, but see, I think that then if you do take that position, then it seems like that is an unlikely result. Well, we think at a minimum it would apply to the exemption that's in the same paragraph. No, but I don't understand why that. Well, because it's in the same paragraph, and it's very clear that it says the provisions of this paragraph do not apply to someone acting as a broker-dealer. And so I think to the extent there's any possible ambiguity, the rule of lenity would at least be our last salvage there. So I'm happy to rest on our briefs at this point unless Your Honor has something. Okay. Thank you. Thank you. Thank you. Thank you. We will adjourn court, come down and greet counsel.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Henry F. Floyd